UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUDOLPH ISLEY, | |
| Plaintiff, | No. 23 C 01720 |
| v. | Judge Thomas M. Durkin |
| RONALD ISLEY, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rudolph Isley ("Plaintiff") is suing his brother, Defendant Ronald Isley ("Defendant"), seeking a declaration that Plaintiff is a 50% owner of a trademark Defendant registered for THE ISLEY BROTHERS (the "Mark"), and for an accounting and payment of Plaintiff's share of the proceeds that Defendant has allegedly received from exploitation of the Mark. Defendant filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 9. For the following reasons, Defendant's motion is denied.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-

1

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

In 1954, brothers Rudolph, Ronald, and O'Kelly Isley founded the musical group The Isley Brothers (the "Group"). R. 1 ¶¶ 4–6. The Group achieved considerable success, including induction into the Rock and Roll Hall of Fame in 1992 and the Songwriters Hall of Fame in 2022; receiving gold, platinum or multi-platinum certification on thirteen of their albums by the Recording Industry Association of America; receiving the Grammy Lifetime Achievement Award in 2014; and having been recognized on the Billboard Hot 100 chart with new music in six different decades (most recently, a 2022 remake of the 1975 hit, "Make Me Say It Again Girl," credited to "Beyoncé with Ron Isley and The Isley Brothers"). *Id.* ¶¶ 21–23.

2

Plaintiff alleges that, from the Group's founding, the three brothers "intended to operate and did operate the Group as a common-law partnership." *Id.* ¶ 7. The brothers equally shared in expenses and profits and control of the Group's business, equally contributed capital, collectively entered contracts, and collectively owned property, including three New Jersey corporations, 300 acres of land, and over 100 registered copyrights in musical compositions. *Id.* ¶¶ 8–12. In 1973, younger brothers Ernie and Marvin Isley and brother-in-law Chris Jasper joined the Group but did not have ownership, direction, or control rights. *Id.* ¶ 14. The three additional members left the Group in 1984 to perform under the name Isley Jasper Isley. *Id.* ¶ 15. O'Kelly Isley died intestate in 1986. *Id.* ¶ 17. According to Letters of Administration issued by the Bergen County, New Jersey Surrogate Court, O'Kelly's interests passed equally to Plaintiff and Defendant, with each receiving a 50% share of ownership. *Id.* ¶ 18.

Three years later, due to O'Kelly's death and his own health issues, Plaintiff stopped performing or recording new music, but allegedly continued to promote and manage the Group's properties. *Id.* ¶ 20. Recently, Plaintiff participated in the negotiations of a multi-million-dollar music publishing deal in 2018, under which Plaintiff and Defendant each received 50% of royalties, and a license deal for the use of the Group's song "Shout" in a 2023 Super Bowl commercial.[1] *Id.* To date, he also

---

[1] Those whose only exposure to the song "Shout!" includes hearing it at wedding receptions and watching the toga party scene in National Lampoon's Animal House may think that the song is attributable to Lloyd Williams of Otis Day and the Knights. But a simple Google search reveals that "Shout!" was actually written and recorded by The Isley Brothers.

3

continues to receive royalties from sales of the Group's recordings and payments from hip-hop and rap producers who digitally sample the Group's recordings under license. *Id.* ¶¶ 25–26. Plaintiff also alleges that, at some point after O'Kelly's death, Isley Brothers Royalty Venture I SPC Inc. ("IBRV"), a Delaware corporation, was created. *Id.* ¶¶ 28–29. IBRV is owned equally by Plaintiff and Defendant and exists to perform business and administration activities on behalf of the Group as to its royalty income. *Id.* ¶¶ 28–29. And then, in 2000, Plaintiff and Defendant created Isley Brothers L.L.C. (the "LLC"), a Delaware limited liability corporation to perform financial activities relating to an indenture for the sale of notes with another entity. *Id.* ¶¶ 29–30. Members of the LLC are Plaintiff, Defendant, and IBRV, with IBRV as the managing member. *Id.* ¶ 31.

On November 2, 2021, Defendant submitted an application to the U.S. Patent and Trademark Office ("USPTO") for the Mark THE ISLEY BROTHERS exclusively in his own name. *Id.* ¶ 32. The USPTO approved the application, and the Mark was registered on August 16, 2022. *Id.* ¶ 33. Defendant listed the priority date of the Mark as 1954, The Isley Brother's founding year. *Id.* ¶ 34. Plaintiff believes Defendant is commercially exploiting the Mark without the approval of Plaintiff. *Id.* ¶ 38.

Plaintiff filed suit seeking a declaration that he jointly owns all statutory and common law rights to the THE ISLEY BROTHERS Mark, as well as for an accounting and payment of Plaintiff's 50% share of the proceeds Defendant has received in connection with his sole registration of the Mark. *Id.* ¶ 1. Defendant has filed a motion to dismiss for failure to state a claim. R. 9.

**Discussion**

Count I of the Complaint seeks a judicial declaration that Plaintiff jointly owns the contested Mark. Plaintiff's theories of ownership rights in the Mark are based on: 1) a common law partnership between Plaintiff and Defendant that owns the Mark; and 2) a continuing right to the Mark by virtue of Plaintiff's involvement with the Group. Defendant challenges, and the Court addresses, both theories.

**I.  The Existence of a Common Law Partnership**

Defendant first argues that Plaintiff does not plausibly allege that a partnership, to which he belongs, owns THE ISLEY BROTHERS Mark. Defendant contends that, assuming a three-member partnership consisting of Plaintiff, Defendant, and O'Kelly had ownership rights in the Mark, this partnership dissolved upon O'Kelly's death in 1986. R. 9 at 5. Moreover, he contends that Plaintiff pleads neither the existence of an express agreement to continue the partnership, nor sufficient facts to establish a new two-person partnership between Plaintiff and Defendant after O'Kelly passed away. *Id.* at 6–7.

A partnership can be "dissolved either by judicial order or by operation of law." *Cross v. O'Heir*, 2013 IL App (3d) 120760, ¶ 33 (citing *Schlossberg v. Corrington*, 80 Ill. App. 3d 860, 863 (1980)). "As a general rule, the death of a partner dissolves a partnership unless there is an express agreement that the partnership will continue thereafter." *Cross*, 2013 IL App (3d) 120760, ¶ 33 (citing *Oneida State Bank v. Peterson*, 226 Ill. App. 381, 383 (1922)). Assuming that rights to the Mark were originally owned by a three-member partnership of Plaintiff, Defendant, and their

5

brother O'Kelly, Defendant is correct that the partnership would have dissolved as a matter of law upon O'Kelly's death in 1986, and that Plaintiff does not plead the existence of an express agreement to continue the partnership. *See Cross*, 2013 IL App (3d) 120760, ¶ 33.[2]

But Plaintiff has pleaded facts upon which an inference of a two-member partnership between himself and Defendant following O'Kelly's death in 1986 can plausibly be based. A partnership exists under Illinois law when two "or more persons . . . carry on as co-owners a business for profit . . . whether or not the persons intend to form a partnership." 805 ILCS 206/202. A written agreement is not required to create a partnership. *Id.* It can be established by a "verbal" agreement or based on the facts and circumstances. *Seidmon v. Harris*, 172 Ill. App. 3d 352, 357–58 (1988) (citing *Rizzo v. Rizzo*, 3 Ill.2d 291, 299 (1954)); *see also Hoover v. Crippen*, 163 Ill. App. 3d 858, 862 (1987) ("As between the parties, the existence of a partnership relation is a question of intention to be gathered from all the facts and circumstances."). A partnership can be inferred from factors including:

> the manner in which the parties have dealt with each other; the mode in which each has, with the knowledge of the other, dealt with persons in a partnership capacity; whether the alleged partnership has

---

[2] Plaintiff contends O'Kelly's death would not have ended the three-member partnership, in part because the partnership still had significant assets which needed to be wound up. *See* R. 14 at 4–5. But Plaintiff's introduction of facts regarding winding up in a responsive brief rather than in an amendment to the Complaint is improper. *See Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ."). Even if facts about winding up were properly pleaded, Plaintiff's argument that a partnership would take 37 years to wind up is the kind of unreasonable inference a court should not accept in its review of a motion to dismiss.

advertised using the firm name; and whether the alleged partners shared the profits.

*Seidmon*, 172 Ill. App. 3d at 357.

Defendant argues that Plaintiff's only relevant allegations are his share in royalties and profits, and that "mere participation in profits[ ] does not alone create a partnership." *Argianas v. Chestler*, 259 Ill. App. 3d 926, 942 (1994) (citing *Rizzo*, 3 Ill. 2d at 300). But "[a] person who receives a share of the profits of a business is presumed to be a partner." 805 ILCS 206/202(c)(3). And here, in addition to allegations that Plaintiff and Defendant shared and continue to share profits and royalties related to the Group, there are facts establishing Plaintiff's and Defendant's dealings with each other and with third parties on behalf of the Group to sufficiently support the presumption that a partnership exists. For example, Plaintiff alleges facts including: that Plaintiff and Defendant apparently continued performing and recording together for three years following O'Kelly's death (R. 1 ¶¶ 18–20); that by judicial decree, Plaintiff and Defendant each own 50% of the Group following their brother's death (*id.* ¶ 18); that neither Plaintiff nor Defendant can enter into agreements about the Group or the Mark without approval of the other (*id.* ¶ 19); that Plaintiff has a role in promoting and managing the Group and entering into contracts for the Group despite no longer performing live (*id.* ¶ 20); that Plaintiff and Defendant have recently jointly negotiated and entered into contracts relating to music publishing and licensing by which each received 50% of profits or royalties (*id.*); and that Plaintiff and Defendant created IBRV (of which Plaintiff and Defendant are

7

each 50% owners) and an LLC (of which Plaintiff, Defendant, and IBRV are members) to manage financial and administrative tasks related to the Group (*id.* ¶¶ 28–31).

In other cases, courts have found the existence of a partnership from similar facts. *Compare Legacy Seating, Inc. v. Com. Plastics Co.*, 65 F. Supp. 3d 542, 552 (N.D. Ill. 2014) (conducting meetings together; entering contracts together; and contributing either financial resources and/or time and energy to the joint venture establish the existence of a partnership); *with Snyder v. Dunn*, 265 Ill. App. 3d 891, 894 (1994) (single joint loan to purchase office equipment did not by itself establish the existence of a partnership). Therefore, the facts in the Complaint, taken in the light most favorable to the Plaintiff, are enough to state a plausible claim that a partnership exists. *Twombly*, 550 U.S. at 555 ("detailed factual allegations" are not required at the pleading stage).

## II. Continuing Right in the Mark Outside of a Partnership

Defendant also contends that, absent the existence of a partnership, Plaintiff has no continuing right in the Mark because he left the Group when he decided to stop performing and recording music, and that the Mark continues to be used by Defendant and others in connection with new songs and performances.[3] In the unique

---

[3] Plaintiff characterizes Defendant's argument as the "forfeiture" affirmative defense and contends that he is not required to plead around affirmative defenses. Defendant states he is not attempting to make a forfeiture argument and that he is merely arguing Plaintiff lacks a continuing right in the Mark because he left the Group and has not been performing or recording music under the Mark for over three decades. But this seems close to the definition of forfeiture—that a person discontinued use of a mark without the intent to resume. *Kingsmen v. K-Tel Int'l, Ltd.*, 557 F. Supp. 178, 182–83 (S.D.N.Y. 1983). Further, some cases cited by Defendant couch similar

context of individual members' rights to a musical group's trademark, other courts have found "that members of a group do not retain rights to use the group's name when they leave the group." *Robi v. Reed*, 173 F.3d 736, 740 (9th Cir. 1999) (collecting cases); *see also Giammarese v. Delfino*, 197 U.S.P.Q. 162, 163 (N.D. Ill. 1977) (describing Seventh Circuit's holding that departed member of the musical group "The Buckinghams" "clearly [did] not possess[ ] . . . a sufficient proprietary interest in the name to justify his conveyance of the entire trade name for use by a new and entirely distinct musical group."). On the other hand, "a person who remains continuously involved with the group and is in a position to control the quality of its services retains the right to use of the mark, even when that person is a manager rather than a performer." *Robi*, 173 F.3d at 740 (citing *Rick v. Buchansky*, 609 F. Supp. 1522 (S.D.N.Y. 1985)); *see also Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1132–33 (11th Cir. 2018) (holding that a member of "The Commodores" who "split from the band" had no right to continue using the name, and that the right instead "remained with the group members who continued to use and exert control over the group.").

Plaintiff's claim that he has a continuing right to the Mark is plausible because he alleges sufficient facts to establish that he controls the quality of the Mark and did not, as Defendant claims, leave the Group entirely. In his Complaint, Plaintiff alleges he:

---

questions in terms of "forfeiture." *See, e.g.*, *id*. But even accepting arguendo that Defendant's argument is *not* one of "forfeiture," it still fails.

> has remained active in promoting and managing the Group's properties [following his 1989 discontinuance of performing], including a major multi-million dollar music publishing deal in 2018, under which Plaintiff and Defendant each received 50%, and most recently the negotiation of a lucrative license deal for the use of the Group's song "Shout" in a commercial that was aired on the broadcast of the 2023 Super Bowl.

R. 1 ¶ 20. Assuming these facts as true, Plaintiff's contention is that when he ceased performing, he did not leave the Group, but instead took on the sort of continuing managerial role that creates a continuing ownership right in the Mark.

In *Robi*, for example, the Ninth Circuit affirmed that the founder and long-time manager of "The Platters" had exclusive rights to the name, even when he was no longer performing with the group. 173 F.3d at 740. On the other hand, a former member of the The Platters did not have any right to assign an interest in the name to his wife because he "left the group and never returned to it." *Id.* In *Rick,* the court held that the manager of a singing group had rights to the trademark in the group's name despite never having performed and holding a "behind-the-scenes role." 609 F. Supp. at 1538. And in *Kingsmen v. K-Tel Int'l, Ltd.*, 557 F. Supp. 178, 182–83 (S.D.N.Y. 1983), the court held in part that the former lead singer of "The Kingsmen" did not have the right to use the name after his departure, but that other former members retained rights to the name because they "did more than simply sit idly by while receiving royalties," such as promoting their previously recorded work and licensing their songs. *Id.* Plaintiff's allegations regarding his activities on behalf of the Group are more like those in *Robi*, *Rick* and *Kingsmen* than the former members in Defendant's other cited cases who left their musical groups entirely and did not

10

allege any continuing role. *See Giammarese*, 197 U.S.P.Q. at 163 (former member of band who left the group entirely could not use the name); *Commodores Ent. Corp.*, 879 F.3d at 1121 (same). Drawing all reasonable inferences in favor of Plaintiff, as the Court must, Plaintiff stood in a position to control the quality of the Mark sufficient to survive a motion to dismiss.[4]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (R. 9) is denied.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: August 23, 2023

---

[4] The Court therefore need not reach Defendant's argument that because Count I of the Complaint must be dismissed, Count II for an accounting—which Defendant argues is dependent on Count I—must be dismissed as well. R. 9 at 11.

11